IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

KASON INDUSTRIES, INC.,            )
                                   )
         Plaintiff,                )
                                   )         CIVIL ACTION FILE
v.                                 )
                                   )         NUMBER 3:13-cv-12-TCB
COMPONENT HARDWARE GROUP,)
INC.,                              )
                                   )
         Defendant.                )

## O R D E R

This patent-infringement suit is before the Court for construction of the disputed terms in the U.S. patent no. 7,571,887.

I.     Background

Kason Industries, Inc. owns the '887 patent. The claimed invention improves upon the prior art by providing a more affordable yet sturdy height adjustable support for food service equipment. Put simply, the adjustable support can be placed on the bottom of the legs of large food-service equipment and adjusted to keep the equipment level.

In January 2013, Kason filed this suit against Component Hardware Group, Inc. ("CHG") for patent infringement. Following the Local Patent Rules, the parties filed a joint claim construction statement requesting the construction of two terms. Each party provided an opening brief in support of its preferred constructions as well as a brief in opposition to the other party's constructions. On January 28, 2014, both parties were heard at a *Markman* hearing.

II.   Claim Construction Standard

"'Claim construction' is the judicial statement of what is and is not covered by the technical terms and other words of the claims." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001). Claim construction is thus a question of law that asks courts to ascertain the meaning and scope of the allegedly infringed patent claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996). This is because patent law's "bedrock principle" is that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v.*

*Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1115 (Fed. Cir. 2004)) (internal quotation marks omitted).

Generally, the words of a claim are given their ordinary and customary meaning: "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312-13.  In some cases, this meaning "may be readily apparent even to lay judges." *Id.* at 1314.  Claim construction then consists of "little more than the application of the widely accepted meaning of commonly understood words," so consulting "general purpose dictionaries may be helpful." *Id.* Often, however, the ordinary and customary meaning of a claim term is not readily apparent, or the patentee has used a term idiosyncratically.  In these cases, courts consider "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean": the claim language, the specification, the prosecution history, "and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (quoting *Innova*, 381 F.3d at 1116) (internal quotation mark omitted).

"[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.*  Both "the context in which a term

is used in the asserted claim" and the "[o]ther claims of the patent in question" aid courts in determining the disputed term's ordinary meaning. *Id.* For example, when a dependent claim adds a particular limitation, this "gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15. This is known as the doctrine of claim differentiation. *See SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1361 (Fed. Cir. 2012).

The specification includes a written description of the claimed invention and "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)) (internal quotation marks omitted). Courts thus read claims in light of the patent's description. *Markman*, 52 F.3d at 979. In the end, the correct construction is one "that stays true to the claim language and most naturally aligns with the patent's description of the invention." *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

Extrinsic evidence is any evidence outside of the patent and prosecution history. *Id.* at 1317. Recognized examples include dictionaries,

especially technical dictionaries, and treatises. *Id.* The Federal Circuit, however, encourages courts to consider extrinsic evidence within the context of intrinsic evidence. *See id.* at 1319. So while courts can exercise their discretion and admit extrinsic evidence, in doing so they "should keep in mind the flaws inherent in each type of evidence and assess that evidence accordingly." *Id.*

Finally, construction precedes an analysis for infringement or validity. *See Markman*, 52 F.3d at 976 ("An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." (internal citation omitted)); *id.* at 996 n.7 ("A claim must be construed before determining its validity just as it is first construed before deciding infringement.").

III. Discussion

The parties request construction of the following:

1. In claim 1, the phrase "an insert second portion with a second select external diameter smaller *that* said *channel* first portion first select external diameter."

2.      In claims 1, 4 and 7, the term "projection."[1]

---

[1] In full, claims 1, 4 and 7 read:

1.  A height adjustable support for supporting food service equipment at different elevations above a supporting floor, the height adjustable support being adapted to be mounted to the bottom end of the food service equipment, and which comprises an upper portion and a lower portion, said upper portion having a tubular body and an externally threaded stud fixedly mounted concentrically within said tubular body, said stud having a top section and a bottom section opposite said top section, said lower portion having a foot with a channel therein having a channel first portion adjacent a top end of said foot with a select internal diameter and a channel second portion spaced from said top end and extending from said channel first portion, said channel second portion having an internal diameter less than said channel first portion internal diameter, the height adjustable support lower portion also including an internally threaded insert adapted to be threadably coupled to said stud bottom section, said insert having an insert first portion with a first select external diameter configured to be received tightly within said foot channel first portion and <u>an insert second portion with a second select external diameter smaller *that* said *channel* first portion first select external diameter</u> and configured to be received tightly within said foot channel second portion, wherein said foot channel also includes at least one <u>projection</u> and wherein said insert second portion contacts said at least one <u>projection</u>, whereby the support may be coupled onto a food service equipment by threading the top section of the stud into the equipment and whereby the height of the equipment may be adjusted by threadably positioning the lower portion along the bottom section of the threaded stud.

4.  A height adjustable support for supporting food service equipment at different elevations above a supporting floor, the height adjustable support being adapted to be mounted to the bottom end of the food service equipment, and which comprises a leg having a body with a central passage therethrough, an externally threaded stud fixedly mounted within said body central passage, and a plastic foot having a channel therein including a t-shaped channel portion adjacent a top end of said foot, said foot also including a t-shaped insert having a threaded passage therein configured to threadably receive said stud for threaded movement along said stud, said t-shaped insert being tightly received within said t-shaped channel portion, wherein said foot channel also includes at least one <u>projection</u> and wherein said t-shaped insert contacts said at least one <u>projection</u> whereby the support may be coupled to a food service

6

Kason argues that the disputed phrase contains two obvious errors—the words *that* and *channel*—and asks that these words be construed as follows: the word *that* should be replaced with the word *than*, and the word *channel* should be replaced with the word *insert*. As for the term *projection*, Kason argues that no construction is needed and that *projection* should be given its ordinary meaning. But if construction is necessary, Kason asks the Court to define *projection* as "a protruding part."

Conversely, CHG urges the Court to find that claims 1, 4 and 7 are invalid because they violate 35 U.S.C. § 112. Its first argument is clear.

---

equipment by threading the top end of the threaded stud into the equipment and whereby the height of the equipment may be adjusted by threadably positioning the foot along the lower end of the threaded stud.

7. A height adjustable support for supporting food service equipment at different elevations above a supporting floor, the height adjustable support being adapted to be mounted to the bottom end of the food service equipment, and which comprises, a leg with an externally threaded stud, a plastic foot having a channel therein with a first channel portion of a select size and a second channel portion extending from said first channel portion and having a select size smaller than said first channel portion select size, and an insert having a threaded passage therein configured to threadably receive said stud for threaded movement along said stud, said insert having a first insert portion configured to conform with said foot first channel portion and a second insert portion extending from said first insert portion and being configured to conform with said foot second channel portion, wherein said foot channel also includes at least one projection and wherein said second insert portion contacts said at least one projection, whereby the support may be coupled to a food service equipment by threading the top end of the threaded stud into the equipment and whereby the height of the equipment may be adjusted by threadably positioning the foot along the lower end of the threaded stud.

7

CHG contends that the disputed phrase renders claim 1 indefinite—meaning reasonable claim-construction efforts cannot produce a definition that would alert skilled artisans of the claim's metes and bounds. But its second argument is unclear. For example, CHG appears to contend that claims 1, 4 and 7 fail the written-description requirement of § 112(a): "The term "projection" used in Claim 1[, 4 and 7] is not used in the specification of the '887 Patent. Thus, the written description requirement of 35 U.S.C. § 112 is not met." But after discussing the specification, CHG concludes:

> The specification of the '887 Patent . . . provides a written description of an embodiment of a "rib."
>
> As a question of law, the specification of the '887 Patent provides "enablement" to support the disclosure of a rib 24 but not enablement to support "a projection" in any broad sense other than the narrow sense of a rib.

During the *Markman* hearing CHG was asked to clarify its argument. Specifically, the Court inquired whether its argument was that by not including the term *projection* in the specification, the '887 patent failed subsection (a)'s written-description or enablement requirement. CHG's counsel replied that CHG was not making either argument. Instead, CHG's counsel stated: if the term *projection* means "a protruding part" (Kason's

8

definition if construction is needed) and if a rib is a protruding part, then how is a projection not a rib?

### A. "an insert second portion with a second select external diameter smaller *that* said *channel* first portion first select external diameter"

This disputed phrase, contrary to CHG's contention, does not render claim 1 indefinite. "A claim is indefinite only when it is 'not amenable to construction' or 'insolubly ambiguous.'" *Biosig Instruments, Inc. v. Nautilus, Inc.*, 715 F.3d 891, 898 (Fed. Cir. 2013), *cert. granted*, 82 U.S.L.W. 3195 (2014). Insoluble ambiguity occurs only when "reasonable efforts at claim construction result in a definition that does not provide sufficient particularity and clarity to inform skilled artisans of the bounds of the claim." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1371 (Fed. Cir. 2011). So the general principles of claim construction apply to questions of indefiniteness. *Biosig Instruments*, 715 F.3d at 898. Thus, a claim is indefinite only if reasonable claim-construction efforts cannot produce a definition that adequately marks the claim's metes and bounds—from the skilled artisan's perspective. And "[i]t is well-settled law that, in a patent infringement suit, a district court may correct an obvious

error in a patent claim." *CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1358 (Fed. Cir. 2011).

The errors in the disputed phrase are obvious. Read in context, the drafter of claim 1 is plainly describing the second element of an internally threaded insert. Claim 1 reads,

> the height adjustable support lower portion also <u>including an internally threaded insert</u> adapted to be threadably coupled to said stud bottom section, <u>said insert</u> having [1] an insert first portion with a first select external diameter configured to be received tightly within said foot channel first portion and [2] <u>an insert second portion with a second select external diameter smaller *that* said *channel* first portion first select external diameter</u> and configured to be received tightly within said foot channel second portion . . . .

The term *that* is a scrivener's error; the correct word obviously is one-letter different: *than*. The claim limitation is clearly making a size comparison. In this context, *smaller that* is gibberish; the correct phrase is *smaller than*. Thus, the term *that* will be construed as "than."

The limitation now states that the second element of the internally threaded insert contains "an insert section portion with a second select external diameter" that is smaller than "*said* channel first portion first select external diameter." A well-worn principle of claim drafting is that "[t]he subsequent use of definite articles 'the' or 'said' in a claim refer back

10

to the same claim term." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008); *see id.* at 1343 (noting that grammatically claim terms using "said" are "anaphoric phrases, referring to the initial antecedent phrase"). The problem here is that no "channel first portion first select external diameter" has been "said."

Kason argues that if the word *channel* is replaced with the word *insert*, the phrase "said insert first portion first select external diameter" will then have an antecedent; indeed, it would refer to the first element of the internally threaded insert. CHG contends that even if the word *insert* is substituted for the word *channel*, the phrase still has no antecedent because the purported antecedent phrase reads, "said insert having an insert first portion *with a* first select external diameter."

Kason has the better argument. No skilled artisan would have difficultly concluding that the "said insert first portion first select external diameter" refers to the "said insert having an insert first portion with a first select external diameter."[2] The relevant question then is whether this error—using *channel* instead of *insert*—is obvious.

---

[2] Consider the other phrase that is a part of the second element of the internally threaded insert: "said foot channel second portion." The antecedent of this phrase reads, "said lower portion having a foot with . . . a channel second portion." This phrase is not disputed, so presumably CHG believes that a skilled artisan would have no

It is. For starters, patents are presumptively valid. *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1331 (Fed. Cir. 2010). This explains the familiar axiom of claim construction: "Claims should be so construed, if possible, as to sustain their validity." *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999). Here, construing *channel* as "insert" is both "practicable" and in no way conflicts with the express language of the claim. *See id.* (noting that the axiom applies only when "the construction is 'practicable' and does not conflict with the explicit language of the claim"). Nor does this construction broaden claim 1.[3] Thus, the disputed phrase will

---

problem identifying the correct antecedent even though the words "with a"—and many more—separate *foot* from *channel second portion*.

[3] Compare the Federal Circuit's discussion of the process for invalidating certificates of correction issued by the U.S. Patent and Trademark Office for impermissibly broadening the original claim in *Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347 (Fed. Cir. 2007). To succeed the moving party must prove that "(1) the corrected claims are broader than the original claims; and (2) the presence of the clerical or typographical error, or how to correct that error, is not clearly evident to one skilled in the art." *Id.* at 1353. The first element is a question of law; the second element is a question of fact. *Id.* at 1353, 1354.

> The court noted that clerical or typographical errors fall into three categories.
>
> The first category involves "mistakes [that] are immediately apparent and leave no doubt as to what the mistake is." This category includes "misspellings that leave no doubt as to the word which was intended; 'frane' instead of 'frame,' for example." . . . .
>
> . . . "In contrast, a second category includes those typographical mistakes not apparent to the reader at all; for example, a mistake resulting in another word that is spelled correctly and that reads logically in the context of the sentence. A third category of mistakes includes those where

be construed as "an insert second portion with a second select external diameter smaller *than* said *insert* first portion first select external diameter."

B. "projection"

Kason contends that because the term *projection* is "sufficiently clear and is a commonly understood word" whose "meaning to a person of skill in the art is readily apparent," no construction is necessary. CHG does not dispute Kason's claims. The first issue then is whether this term requires construction.

Patentees may select "a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term and disavows its full scope." *Thorner v. Sony Computer Entm't*

---

it is apparent that a mistake has been made, but it is unclear what the mistake is."

*Id.* at 1354 (brackets in original) (internal citations omitted) (quoting *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1370 (Fed. Cir. 2001)). Mistakes that fall into the second and third categories cannot be corrected if doing so would broaden the claim, for a contrary rule could create serious public-notice problems. *See id.*

CHG points out that Kason has not requested a certificate of correction. But it cites no case law, nor has the Court found any, that requires Kason to do so or precludes construction of the disputed phrase unless Kason does. Additionally, CHG has not argued that adopting Kason's preferred construction will impermissibly broaden the claim.

*Am., LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012). Here, CHG's preferred construction of the term *projection*—"rib"— would unduly narrow the term's broad, ordinary, and well-understood meaning.[4] This construction is rejected, and the term will be giving its ordinary and customary meaning. No construction is necessary.

Although the Court will not construe the term *projection*, it has not given short-shrift to its obligation to construe disputed terms. "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Thus, "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1363 (Fed. Cir. 2008). And when a district court concludes that a disputed term requires no construction it

---

[4] During the *Markman* hearing CHG offered a rhetorical syllogism to bolster its position: if the term *projection* means "a protruding part" (Kason's definition if construction is needed) and if a rib is a protruding part, then how is a projection not a rib? This argument fails because it commits the fallacy of undifferentiated middle. *See* Bradley Dowden, *Fallacies*, THE INTERNET ENCYCLOPEDIA OF PHILOSOPHY (last visited Jan. 28, 2014), http://www.iep.utm.edu/fallacy/#UndistributedMiddle.

may err if the disputed term has several ordinary meanings or failing to construe the term leaves the parties' dispute unresolved. *Id.* at 1361.

But when, as here, the district court rejects a proposed construction—and thus resolves the parties' dispute—further construction is unnecessary. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) (affirming district court's decision to not allow previously disputed term that was not construed but rather given its plain and ordinary meaning to be reconstrued by the jury based on proposed expert testimony that did not offer a new definition). Put simply, "the Court need not provide a new definition or rewrite a term when the Court finds the term's plain and ordinary meaning is sufficient." *I/P Engine, Inc. v. AOL, Inc.*, 874 F. Supp. 2d 510, 516 (E.D. Va. 2012). And here the ordinary and customary meaning of the term *projection* requires no elucidation.[5]

---

[5] Additionally, Kason's counsel persuasively argued at the *Markman* hearing that adopting CHG's proposed construction would render the dependent claims 2, 5 and 8 superfluous. And the doctrine of claim differentiation precludes this result. "When, as here, the sole difference between the independent claim and the dependent claims is the limitation that one party is trying to read into the independent claim, 'the doctrine of claim differentiation is at its strongest.'" *SanDisk Corp.*, 695 F.3d at 1361 (quoting *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004)).

15

## IV. Conclusion

Accordingly, the disputed terms in the '887 patent are construed as follows:

| Disputed Terms | Construction |
|---|---|
| "an insert second portion with a second select external diameter smaller *that* said *channel* first portion first select external diameter." | "an insert second portion with a second select external diameter smaller *than* said *insert* first portion first select external diameter." |
| "projection" | ordinary and customary meaning |

IT IS SO ORDERED this 31st day of January, 2014.

_____
Timothy C. Batten, Sr.
United States District Judge

16